**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| Frank L. Snider, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.    1:10-cv-100 CEJ |
| | ) |
| City of Cape Girardeau, Missouri, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

## I.    Introduction

When Plaintiff, Frank L. Snider, III (hereinafter "Snider" or "Plaintiff"), took to the streets of Cape Girardeau on October 20, 2009, to communicate his view that although the United States holds itself out as a unified nation that treats its citizens equally and fairly, reality is different, he was not surprised that his message was understood.  That is because he expressed his message by publicly and intentionally treating his United States Flag in a disrespectful manner.  As the Supreme Court had recognized more than twenty years earlier, "[t]he very purpose of a national flag is to serve as a symbol" and, thus, the flag is "[p]regnant with expressive content[.]" *Texas v. Johnson*, 491 U.S. 397, 405 (1989).  It was likewise no surprise that one citizen viewing Snider's demonstration would call the police to register her offense at Snider's expressive conduct.

What is surprising, at first, is the complete disregard by local officials of Snider's First Amendment right to engage in expressive conduct that is disrespectful of the flag. Defendant Matthew Peters (hereinafter "Peters") responded to the call that complained of Snider's

desecration of his flag by arriving at the scene, picking up the flag, and questioning Snider for ten minutes about why he would do such a thing.  Peters recognized Snider was engaging in expressive conduct.  He issued Snider a citation for littering although he admits that the flag was not litter as defined by the ordinance.  Next Peters returned to the police station in search of a state statute under which to charge Snider for his disrespectful treatment of the flag.  Peters sought the filing of a state criminal charge, despite the fact that the normal practice would have been to charge Snider with an ordinance violation when, as here, Defendant City of Cape Girardeau (hereinafter "City") has an ordinance that is substantially the same as the Missouri Flag Desecration statute.  Unlike a state charge, another ordinance citation would not have allowed Peters to immediately arrest and jail Snider, and the penalties for ordinance violation were much less.  Indeed, when arresting Snider on the eventual warrant, Peters advised Snider he would be going to prison for desecrating his flag.  Peters further advised that Snider should move to another country upon his release.

Peters could not cause Snider to be charged and arrested on his own.  He required the aid of Defendant Cape Girardeau Prosecuting Attorney H. Morley Swingle (hereinafter "Swingle"). Swingle authorized the charge.  He applied for, and obtained, an arrest warrant with a $10,000.00-cash-only bond based on representations that Snider was not likely to appear in response to a summons or presented a danger.  There was no basis for either representation.

Snider was arrested.  He spent more than eight hours in jail. After he was released and the state charge dismissed, he was required to appear in court on the littering citation.  He waited for hours before eventually being told the citation had been voided.

Since *Texas v. Johnson* and *United States v. Eichman*, 496 U.S. 310, 315 (1990), reasonably prudent people in the United States know that expressive conduct that is disrespectful

of the flag is protected by the First Amendment.  In the end, however, perhaps the response of Peters and Swingle should not be a surprise.  The policy of the City of Cape Girardeau is to criminalize expressive conduct involving disrespectful treatment of the flag.  The policy is enshrined in a City ordinance that had been used as recently as five years earlier to cite and convict an individual of flag desecration.  The policy is furthered by the City's failure to provide police officers with any training on the First Amendment rights of citizens or to provide any supervision of new officers handling situations involving expressive conduct.

Snider brings this suit for damages and equitable relief pursuant to 42 U.S.C. §1983. The material facts are uncontroverted.  Based on those facts, he is entitled to judgment as a matter of law.

## II.     Factual Background

Snider lives in the City of Cape Girardeau, Missouri. He is a citizen of the United States of America and the State of Missouri.  SOUMF at ¶ 1.

On Tuesday, October 20, 2009, Snider was upset with the government of the United States.  Id. at ¶ 2.  He wanted to publicly express his message that the United States' government treated him in an unfair and unequal manner.  Id. at ¶ 3.  He wanted to reach a large audience, so he chose to express his views on a public, well-traveled street.  Id. at ¶¶ 4, 9.  To increase the number of people who would view his expressive conduct, he waited until 5:00 p.m., knowing then the streets would be filled with people arriving home from work and traffic on the street would be the greatest. Id. at ¶ 4.

Snider expressed his message by publically treating a cherished symbol, the national flag, with disrespect.  Id. at ¶ 5-6, 8. By intentionally and publicly treating his flag with disrespect, Snider wished to communicate the message that although the United States holds itself out as a

3

unified nation that treats its citizens equally and fairly, reality is different.  Id. at ¶ 6.  He was angry with what he views as the government's broken promises to its citizens.  Id. at ¶ 7.  In particular, he was dissatisfied with the policies of this country that make it difficult for persons like him to obtain and maintain employment or benefits.  Id.  The flag symbolizes the promises of unity, equality, and fairness, so by desecrating his flag, he conveyed his belief that the symbol is false. Id. at ¶ 9.

Snider first attempted to burn his flag.  Id. at ¶ 5.When his lighter did not work, he used his knife to shred the flag and throw it to the ground.  Id. at ¶ 10.  He did so with the intent to communicate his message that the symbol of the Flag as a promise of unity, equality, and fairness is false.  Id.

A number of members of the public saw Snider desecrate his flag.  Id. at ¶ 6.  One of them called the police.  Id. at ¶¶ 12-13.  She asked the dispatcher: "Can you send a police officer down here?"  She understood the message conveyed by Snider's disrespectful treatment of the flag.  She explained Snider had "cut the United States flag up with a knife."  Id. at ¶ 13.  She was offended by Snider's expressive conduct, "I am a United States citizen and I don't like it… I happen to live in the United States and I am proud of it[.]"  Id.

Defendant City of Cape Girardeau Officer Matthew Peters (hereinafter "Peters") arrived at the scene of Plaintiff's demonstration shortly thereafter.  Id. at ¶ 14.  When Peters arrived, Snider was still standing in the vicinity of the flag in continuation of his demonstration.   Id. at ¶ 17.  Peters was visibly angry when he got out of his car.  Id. at ¶ 19.  He immediately saw Snider and picked up the flag.  Id. at ¶ 18.  Carrying the flag, Peters confronted Snider.  Id. at ¶ 19.  Peters spoke to no other witnesses.  Id. at ¶ 20.

4

Peters investigated the disrespectful treatment of the flag as a crime. Id. at ¶¶ 18-38. Although Snider promptly admitted it was he who had desecrated his flag, Peters continued to interrogate Snider. Id. at ¶ 21. Snider was not at liberty to leave or to decline to answer questions as Peters continued his investigation of the flag's treatment. Id. at ¶ 22-23. The disrespectful treatment of the flag was the sole focus of Peters's investigation and detention of Snider. Id. at ¶¶ 18-38.

Peters did not understand why Snider would treat the Flag with disrespect. Id. at ¶ 24. Snider explained his point of view. Id. at ¶¶ 25. He also told Peters that the public, disrespectful treatment of his flag was intended to express a message. Id. Peters understood that Snider was making an expressive statement and not merely trying to burn or rip up his flag. Id. at ¶ 29. Peters continued to detain Snider while running his name through dispatch and issuing him a citation. Id. at ¶¶ 30-31.

Peters cited Snider for allegedly violating the City's littering ordinance. Id. at ¶ 31-39. Peters knew that Snider had not violated the ordinance. Id. at ¶ 37. Under the ordinance, "litter" means only garbage, refuse, rubbish, or dangerous waste material. Id. at ¶ 36. Peters admits Snider's flag was none of those things. Id. at ¶ 37. Although Peters knew of the expressive nature of Snider's conduct with his flag, he did not include that information on the citation. Id. at ¶ 32. In fact, it was the insulting nature of Snider's treatment of his flag that caused Peters to detain him and issue a citation. Id. at ¶¶ 17-39. It was the symbolism of Snider's conduct that offended Peters, something demonstrated by the fact that Peters did not even acknowledge the flag belonged to Snider. Id. at ¶ 32. Instead he wrote on the citation that "Snider admitted to tearing up the United States Flag and throwing it into the middle of [the street] in front of his residence." Id. (emphasis added). In his final communication to the dispatcher Peters reported

that "Mr. Snider was issued a summons for tearing up the American Flag and throwing it in middle of the street." Id. at ¶ 35 (emphasis added). On his incident report, Peters would write that he applied for a warrant for Snider's "[d]esecration of the United States Flag." Id. at ¶ 53 (emphasis added). In Peters's view, Snider's offense was disrespectful treatment of the Flag, as a symbol, rather than Snider's treatment of his own property. Id. at ¶¶ 32, 35, 53.

Peters did not let the matter rest. Id. at ¶ 40. He wrote the littering citation "to start out with[.]" Id. at ¶ 43. Upon returning to the station, he began searching for state charges to bring against Snider for his disrespectful treatment of the flag. Id. at ¶ 40. He learned of Mo. Rev. Stat. §578.095. Id. at ¶ 41. The statute provides, "Any person who purposefully and publicly mutilates, defaces, defiles, tramples upon or otherwise desecrates the national flag of the United States or the state flag of the state of Missouri is guilty of the crime of flag desecration." § 578.095 (1). Violation of § 578.095 is a class A misdemeanor. §578.095(2). In Missouri, a class A misdemeanor is punishable by a term of up to one year imprisonment, a fine up to $1,000.00, or both. Mo. Rev. Stat. §558.011.1(5) and §560.016. 1(1). Being charged with a misdemeanor also subjected Snider to immediate arrest. Peters drafted and signed a "probable cause statement" asserting that Snider had violated §578.095. SUOMF at ¶ 50.

Peters's decision to have Snider charged with a state criminal offense was unusual under the circumstances. Id. at ¶¶ 44-49. The City has an ordinance similar to §578.095. Id. at ¶ 44. Section 17-5 of the Code of Ordinances of the City of Cape Girardeau provides: "Any person who purposefully and publicly mutilates, defaces, defiles, tramples upon or otherwise desecrates the national flag of the United States or the state flag is guilty of the offense of flag desecration." Id. at ¶ 46. The usual custom where both an ordinance and a statute apply to an offense is to charge the person under the ordinance. Id. at ¶ 47. The last time the Cape Girardeau police

charged someone with flag desecration, they did so under the ordinance.  Id. at ¶ 48.  But, as with the littering citation, an ordinance violation for desecration of his flag would not have subjected Snider to immediate arrest and the penalties for violation of the ordinance are far less severe.  Id. at ¶ 52.

Peters's request to charge Snider with a violation of state law required the approval of the Cape Girardeau County Prosecuting Attorney, Defendant Swingle.  Id. at ¶ 54.  Peters transmitted his "Probable Cause Statement" to Swingle.  Id. at ¶ 56.  Despite the fact that the alleged crime was a misdemeanor and the fact that Peters did not claim on the Probable Cause form either that Snider would "not appear in court in response to a criminal summons" or that he posed a "danger," Swingle sought a warrant for Snider's arrest claiming "reasonable grounds to believe the defendant will not appear upon summons or that the defendant is a danger to the crime victim, the community or any other person."  Id. at ¶¶ 57-61.  Swingle signed and initialed a "State Charge Application Form" on Friday, October 23, 2009.  Id. at ¶ 61.  The same morning, a warrant issued for Snider's arrest.  Id. at ¶ 62.  Bond was set at $10,000.00, cash only.  Id.

The warrant was immediately transmitted to Peters.  Id. at ¶ 63.  Peters drove to Snider's home and arrested him at 10:45 a.m.  Id. at ¶¶ 64-65.  Peters told Snider he would be going to prison for desecrating the flag.  Id. at ¶ 66.  Peters further advised Snider that when he got out of prison that he should leave the country.  Id. at ¶ 67.  After handcuffing Snider and placing him in the police car, Peters remarked that had he known that Snider's birthday was the following day, he would have waited until then to arrest him.  Id. at ¶ 68.

Peters booked Snider.  Id. at ¶ 69.  Snider was held pending a $10,000.00 cash-only bond for more than eight hours.  Id. at ¶¶ 69-70.  The misdemeanor charge was ultimately dismissed.  Id. at ¶ 71.

Peters has never received training on the First Amendment rights of citizens, either while at the academy or since joining the Cape Girardeau Police Department two-and-one-half years ago.  Id. a ¶ 73.  Police Chief Carl Kinnison acknowledged that it is unlikely any of his police officers come to his department with any training about the First Amendment.  Id. at ¶¶ 74-75.  In the five years he has led the Department, there has not been any training for police officers on the First Amendment rights of citizens.  Id. at ¶ 76.  Indeed, he does not recall any training on the First Amendment in his thirty-two years with the Department.  Id. at ¶ 77.

During the course of events relevant to this case, Peters received no supervision, including in the drafting and submission of the Probable Cause Statement and issuance of the littering citation.  Id. at ¶ 78.  The City provides no supervision to police officers handling matters that might implicate First Amendment rights of those they encounter. Id. at ¶ 79.

Since his initial interaction with Peters on October 20, 2009, Snider has been chilled from engaging in expressive conduct that involves purposefully and publicly mutilating, defacing, defiling, trampling upon, or otherwise desecrating the flag.  Id. at ¶ 72. But for his fear of being subjected to another arrest for doing so, Snider would engage in expressive conduct that is disrespectful of the flag. Id.

## III.   Argument

### A.   Summary Judgment Standards

This Court should grant Plaintiff's motion for summary judgment because, viewing the evidence in the light most favorable to Defendants, there is no genuine issue of material fact and Plaintiff is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034 (8th Cir. 2005).  The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If that burden is met, then the nonmoving party must come forward and establish specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law."  *Grey*, 396 F.3d at 1034.  Plaintiff meets the standard for summary judgment and, thus, is entitled to summary judgment.

#### 1.   First Amendment Claims – Counts I and II

##### a.   Application of the First Amendment

The First Amendment states that "Congress shall make no law ... abridging the freedom of speech."  U.S. Const. amend. I.  The First Amendment applies to the states and municipalities through the Fourteenth Amendment's due process clause.  *See Gitlow v. New York*, 268 U.S. 652, 666 (1925).

In determining whether the First Amendment applies in this case, the initial inquiry is whether Plaintiff's desecration of the flag constituted expressive conduct. *Texas v. Johnson*, 491 U.S. 397, 403 (1989).  Based on the undisputed evidence, Plaintiff was engaged in expressive

conduct when he stood on a street and treated his flag disrespectfully.  SOUMF at ¶¶ 2-10, 26, 29..

Plaintiff took to a public street to intentionally desecrate that flag in order to publicly communicate a message.  Id.  The message was that although the United States holds itself out as a unified nation that treats its citizens equally and fairly, reality is different, in Plaintiff's view. Id. at ¶ 6.  Plaintiff is angry with what he views as the broken promises of government to its citizens.  Id. at ¶ 7.  In particular, he is dissatisfied with the policies of this country that make it difficult for persons like him to obtain and maintain employment or benefits.  Id. The flag symbolizes the promises of unity, equality, and fairness, so by desecrating his flag, Plaintiff conveyed his belief that the symbol is false.  Id. at ¶ 8.

The Supreme Court has repeatedly recognized the communicative nature of conduct relating to flags. *Johnson*, 491 U.S. at 404-5.  There is "little difficulty identifying an expressive element in conduct relating to flags" because "[t]he very purpose of a national flag is to serve as a symbol of our country[.]" *Id.* at 405.  "Pregnant with expressive content, the flag as readily signifies this Nation as does the combination of letters found in 'America.'" *Id.*  When flag desecration statutes returned to the Supreme Court in *United States v. Eichman*, the Court observed, "The Government concede[d] in these cases, as it must, that appellees' flag burning constituted expressive conduct."  496 U.S. 310, 315 (1990).

Particular conduct is entitled to First Amendment protection where there is an intent to convey a particularized message and a likelihood that the message would be understood by those who viewed it.  *Johnson*, 491 U.S. at 404.  Both elements are present here.  Plaintiff intended to convey a particular message.  SOUMF at ¶ 2-10.  He took to a public street so that his conduct would be observed.  Id. at ¶ 4, 9.  It was observed by members of the public, including one who

called the police and expressed her strong disagreement with Plaintiff's message because she "happen[s] to live in the United States and [is] proud of it." Id. at ¶¶ 12-13. And, as the Supreme Court has recognized, the desecration of the national flag sends a message that is clearly understood by those who view it. Whether America is living up to its promise of equality and fairness is a matter of public concern about which Plaintiff expressed himself as a citizen. Such speech "is much more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964). Accordingly, it "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Meyers*, 461 U.S. 138, 145 (1983)(internal quotation marks omitted). Snider's fellow citizen, who phoned the police to register her dislike for Snider's expression, confirms this analysis. Even Peters recognized that Plaintiff was engaged in expressive conduct in his treatment of his flag. Id at ¶¶ 21-24.

   b. Burden of Proof

   Where the government is regulating expressive activity by means of a criminal sanction, it is the government that bears the burden of proving their actions pass constitutional muster. *Perry Ed. Assn. v. Perry Local Ed. Assn.*, 460 U.S. 37, 45-6 (1983).

   The government's burden to produce evidence is not satisfied by mere speculation or conjecture; it must offer evidence establishing that the problem it identifies is real and that the speech restriction will alleviate that problem to a material degree. *Edenfield v. Fane,* 507 U.S. 761, 770-71 (1993); *see also United States v. Playboy Entm't Group*, 529 U.S. 803 (2000). "First Amendment standards … 'must give the benefit of any doubt to protecting rather than stifling speech.'" *Citizens United v. Federal Election Comm'n*, 130 S. Ct. 876, 891 (2010)

(quoting *Federal Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 469 (2007) (opinion of Roberts, C.J.)).

      c.  Standing

Plaintiff has standing to challenge the statute facially and as it has been applied to him, as well as the ordinance facially.[1]

As reported to the dispatcher and as Peters admitted, Plaintiff was engaged in expressive activity.  SOUMF at ¶¶ 2-10, 25-29.  Plaintiff was detained by Peters for an investigation of his expressive activity.  Id. at ¶¶ 17-38.  At Peters's request and Swingle's direction, charges were filed against Plaintiff.  Id. at ¶ 40-62.  Defendant Swingle caused a warrant to be issued for Plaintiff's arrest for engaging in expressive activity in violation of §578.095.  Id. at ¶¶ 58-62.  Plaintiff could have been charged under § 17-5, as others have been and as would be the usual custom where both an ordinance and a statute apply.  Id. at ¶¶ 44-49.  Peters arrested Plaintiff, and he was held in jail for over eight hours.  Id. at ¶¶ 63-70.  The treatment of Plaintiff was in furtherance of the City of Cape Girardeau's policy of criminalizing expressive conduct that is disrespectful of the flag.  Id. at ¶¶ 44-48.  In addition, Plaintiff stopped engaging in expressive activities involving the flag to avoid again being arrested.  Id. at ¶ 72;  *See Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 792 (8th Cir. 2004).  Having been both arrested for and deterred from exercising his constitutional rights - both as a result of the challenged statute and ordinance - Plaintiff has standing.

---

[1]     Facial challenges to laws that burden rights secured by the First Amendment are not disfavored.  Although the Supreme Court has reiterated that the facial invalidation of other types of statutes is disfavored, First Amendment cases are an exception.  *United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010); *see also Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, fn.6 (2008).

In addition, Plaintiff has standing to challenge the statute and ordinance as overly broad. In First Amendment cases, the traditional rules of standing are altered "to permit 'attacks on overly broad statutes without requiring that the person making the attack demonstrate that in fact his specific conduct was protected.'"  *State v. Janssen*, 219 Wis. 2d 362, 371 (1998)(holding flag desecration statute facially overbroad even though flag-desecrator's conduct was not protected expression)(quoting Bates *v. State Bar of Arizona,* 433 U.S. 350, 380 (1977)).

> d.     Forum Analysis

"The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Ed. Assn.*, 460 U.S. at 44. To determine the correct standard, the Supreme Court uses a forum analysis for evaluating restrictions of speech on government property. *See id.* at 45-6.  Forum analysis begins with a determination whether a property is a traditional public forum, a designated public forum, or a nonpublic forum. *Families Achieving Independence & Respect v. Neb. Dep't of Soc. Servs.,* 111 F.3d 1408, 1418 (8th Cir. 1997).

"'[P]ublic places' historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.'" *Bowman v. White*, 444 F.3d 967, 975 (8th Cir. 2006) (quoting *United States v. Grace,* 461 U.S. 171, 177 (1983)).  Such space occupies a "special position in terms of First Amendment protection" [and] the Supreme Court has ""repeatedly referred to public streets as the archetype of traditional public forum."  *Snyder v. Phelps*, 562 U.S. ___ (2011), (slip op. at 10), 2011 WL 709517 (quoting *Grace*, 461 U.S. at 180 and *Frisby v. Shultz*, 487 U.S. 474, 480 (1988)).

Section §578.095 and §17-5 regulate expressive activity in public forums, as evidenced by the fact that Plaintiff was arrested for engaging in speech activity on a street. Traditional

public fora "'have immemorially been held in trust for the use of the public and [. . .] have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Id.* at 45 (quoting *Hague v. CIO*, 307 U.S. 496 (1939)).

Restrictions on speech in public *fora* are unconstitutional if they (a) are view-point or content based without compelling justification; (b) fail to meet the test for time, place, and manner restrictions; (c) are substantially overbroad; or (d) are so vague that they fail to give notice of the conduct they proscribe and lend themselves to arbitrary and discriminatory enforcement. *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of Law v. Martinez*, 130 S. Ct. 2971, 3020 (2010)(viewpoint-or-content based); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (content-neutral and time, place, and manner); *Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973) (overbroad); *Chicago v. Morales*, 527 U.S. 41, 56-57 (1999) (vague).

e.   Facial Unconstitutionality of Mo. Rev. Stat. § 578.095[2] - Count I

Mo. Rev. Stat. §578.095 regulates expressive activity involving desecration or other disrespectful treatment of the flag by making it subject to a fine of up to $1,000.00, imprisonment for up to one year, or both.  The statute is unconstitutional on its face because it is substantially overbroad and content-based.

i.   Mo. Rev. Stat. §578.095 is Substantially Overbroad

Section 578.095 is facially unconstitutional because it is substantially overbroad.  "[A] statute is facially invalid if it prohibits a substantial amount of protected speech." *United States*

---

[2]   Plaintiff sent notice to the Attorney General of the State of Missouri that he was challenging the constitutionality of §578.095.  See Rule 5.1, Fed.R.Civ.P. (party challenging constitutionality of state statute must serve notice on state attorney general, who may elect to intervene).  The Attorney General has not elected to intervene to defend the constitutionality of the statute.

*v. Williams*, 553 U.S. 285, 292 (2008).  A statute is overbroad if it exceeds constitutional limits in a way that "may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick,* 413 U.S. at 612.  Restrictions that burden or suppress free speech must be narrowly drawn in order to avoid the chilling effect of potential criminal sanction for expressive conduct. "[T]he First Amendment needs breathing space and … statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn[.]" *Id.* at 611.  Where expression may be deterred by laws restricting speech and the constitutionality of those laws remains unquestioned, there is harm to "not only [speakers] but society as a whole, which is deprived of an uninhibited marketplace of ideas." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003); *see also Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984) ("[B]roadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected.").  The government may not suppress lawful speech as a means to prevent unlawful speech, and protected speech does not become unprotected merely because it resembles the latter. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002).[3]

While declaring a speech restriction unconstitutional on overbreadth grounds is "strong medicine," overbreadth is nonetheless a doctrine that has been affirmed in the First Amendment context by numerous U.S. Supreme Court precedents. *See Broadrick*, 413 U.S. at 609-10. *See also Virginia v. American Booksellers Ass'n,* 484 U.S. 383 (1988); *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491,

---

[3]      Even in the area of child pornography, where the societal interest is unquestionably compelling and the unprotected nature of much of the targeted material is clear by objective standards, the laws criminalizing such material have raised difficult questions such as the ancillary burdens upon protected expression. *See Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997).

503 (1985); *Taxpayers for Vincent*, 466 U.S. at 796; *Secretary of State of Maryland v. J.H. Munson Co.*, 467 U.S. 947 (1984).

In the First Amendment context, "a law may be invalidated as overbroad if a 'substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010)(quoting *Washington State Grange,* 552 U.S. at 449, n.6 ). Determining whether a statute is substantially overbroad requires a two-step analysis. First, a court must "construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Williams*, 553 U.S. at 293. Second, based on the first step, a court must determine whether the statute "criminalizes a substantial amount of protected expressive activity." *Id.* at 295.

Section 578.095 broadly criminalizes all purposeful and public treatment that defiles a state or national flag. "Any person who purposefully and publicly mutilates, defaces, defiles, tramples upon or otherwise desecrates the national flag of the United States or the state flag of the state of Missouri is guilty of the crime of flag desecration." §578.095. There are no state court decisions construing §578.095. There is no legislative history available. In Missouri, a court's task in interpreting a statute is to discern the intent of the legislature from the plain meaning of the language used. *Spradling v. SSM Health Care St. Louis*, 313 S.W.3d 683, 686 (Mo. 2010). Under the plain meaning of the language used in the statute, any intentional disrespectful treatment of the state or national flags in public is a criminal offense.

The statute criminalizes a substantial amount of protected speech. Messages expressed through mutilating, defacing, defiling, trampling upon, or otherwise desecrating the flag are protected by the First Amendment. *See Johnson*, 491 U.S. 397; *Eichman*, 496 U.S. at 317 (recognizing "communicative impact of flag destruction"). If the state interest is preventing

breaches of the peace, §578.095 is substantially overbroad because it criminalizes conduct, like Plaintiff's, that does not threaten to disturb the peace.  *See Johnson*, 491 U.S. at 407-10.  There is no evidence that the mutilation, defiling, and desecration of the flag by Plaintiff, or anyone, has actually caused a breach of the peace.  Furthermore, there can be no presumption that because viewers might take serious offense to such expressive conduct that it is likely to disturb the peace.  *Id.* at 408.  Nor may the government "assume that every expression of a provocative idea will incite a riot[.]" *Id.* at 409.   In fact, the citizen who called the police did so to express her disagreement with Plaintiff's expressive conduct. SOUMF at ¶¶ 12-13.  Plaintiff's method of communicating his strong views  did not constitute a breach of the peace.  Here the government action effectuated an unconstitutional "heckler's veto."  No other government interest –aside from an interest in preserving the flag as a symbol of nationhood and national unity, discussed *infra.,* is apparent.

Where a statute is substantially overbroad, it is invalid under the First Amendment. *Stevens*, 130 S. Ct. 1592.  Because §578.095 criminalizes peaceful expressive conduct involving disrespectful treatment of the flag, it burdens substantially more speech than necessary to further any government interest.  Accordingly, summary judgment should be granted to Plaintiff on Count I of his Second Amended Complaint.

ii.   Section 578.095 is Content-Based

Plaintiff was arrested "for his expression of dissatisfaction with the policies of this country, expression situated at the core of our First Amendment values." *Johnson*, 491 U.S. at 411.   Whether Plaintiff's treatment of the flag violated §578.095 "depended on the likely communicative impact of his expressive conduct." *Id.*  As with the federal Flag Protection Act of 1989, "[e]ach of the specified terms [in §578.095] unmistakably connotes disrespectful treatment

of the flag and suggests a focus on those acts likely to damage the flag's symbolic value."
*Eichman*, 496 U.S. at 317.  Missouri has prohibited disrespectful treatment of the state and
national flags in order to preserve the flag as a symbol of nationhood and national unity.  *See
Johnson*, 491 U.S. at 413.

While government may create symbols, promote them, and encourage respectful
treatment, it may not go beyond this to criminally proscribe expressive conduct because of its
likely communicative impact. *Eichman*, 496 U.S. at 318.  An asserted government interest in
preserving the flag as a symbol of nationhood and national unity is an interest related to the
suppression of free expression because the government's concern with protecting the flag's
symbolic meaning is implicated only when a person's treatment of the flag communicates some
message. *Id.* at 314 (quotations omitted).  A flag-desecration statute's "restriction on expression
cannot be justified without reference to the content of the regulated speech[.]" *Id.* at 317-18
(quoting *Boos v. Barry,* 485 U.S. 312, 320 (1988)). Under these circumstances, a statute is
content-based and subjected to "the most exacting scrutiny[.]"  *Id.* at 318.

A content-based restriction on speech must withstand strict scrutiny to pass First
Amendment muster.  *See e.g., Martinez*, 130 S. Ct. at 3020 ("[I]n traditional public forums, such
as public streets and parks, 'any restriction based on the content of ... speech must satisfy strict
scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government
interest.'") (quoting *Pleasant Grove City v. Summum,*129 S.Ct. 1125, 1132 fn.11 (2009)). The
"First Amendment generally prevents government from proscribing speech because of
disapproval of the ideas expressed." *R.A.V.,* 505 U.S. at 382.  Content-based regulations of
speech are "presumptively invalid." *Id.*  The Supreme Court has "concluded the State's asserted
interests [in the preservation of the flag as a symbol of national unity] could not justify the

18

infringement on [a] demonstrator's First Amendment rights." *Eichman*, 496 U.S. at 314 (citing *Johnson*, 491 U.S. at 412).

### iii.     Remedy

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison*, 1 Cranch 137, 163 (1803). Because Plaintiff is entitled to summary judgment on Count I of his Second Amended Complaint, declaratory judgment that §578.095 is facially unconstitutional is appropriate. Declaratory judgment is appropriate relief in a §1983 claim seeking equitable relief, such as this case. *See, e.g.*, *Phelps-Roper v. Koster*, 734 F. Supp. 2d 870, 882 (W.D. Mo. 2010). Declaratory judgment is appropriate where resolution of a controversy would benefit from "specific relief through a decree of a conclusive nature, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Calderon v. Ashmus*, 523 U.S. 740, 745 (1998) (quoting *Aetna Life Ins. Co. of Hartford*, *Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937)).

### f.     Facial Unconstitutionality of Code of Ordinances of the City of Cape Girardeau § 17-5 - Count II

Section 17-5 of the Code of Ordinances of the City of Cape Girardeau is nearly identical to Mo. Rev. Stat. §578.095.[4] Section 17-5 regulates expressive activity involving desecration or other disrespectful treatment of the flag.

---

[4]     The state law mandates, "Any person who purposefully and publicly mutilates, defaces, defiles, tramples upon or otherwise desecrates the national flag of the United States or the state flag of the state of Missouri is guilty of the crime of flag desecration." Mo. Rev. Stat. §578.095. The city ordinance states, "Any person who purposefully and publicly mutilates, defaces, defiles, tramples upon or otherwise desecrates the national flag of the United States or the state flag is guilty of the offense of flag desecration." SOUMF at ¶ 46.

Because the ordinance is not materially different from the statute, the ordinance is unconstitutional as both substantially overbroad and content-based for the same reasons as the state statute (*surpa §§ I.f.i – ii*) .  Accordingly, Plaintiff should be granted summary judgment on Count II of his Second Amended Complaint and this Court should enter declaratory judgment that § 17-5 is facially unconstitutional.

2.      § 1983 Claim for Equitable Relief Against

Defendant Swingle -- Count III

In Count III of his Second Amended Complaint, Plaintiff seeks equitable relief against Defendant Swingle to prevent him from enforcing Mo. Rev. Stat. §578.095 in the future.[5]

Upon learning of Plaintiff's disrespectful treatment of his United States flag and after being sent Peters's Probable Cause Statement, Swingle signed and initialed a State Charge Application Form and sought a warrant for Plaintiff's arrest under §578.095.  SOUMF at ¶ 58. Swingle did so despite the fact the §578.095 is a misdemeanor.  Id. at ¶¶ 50-61.  He did so despite the fact that the Probable Cause Statement did not claim that Plaintiff would either "not appear in court in response to a criminal summons" or that he posed a "danger."  Id. at ¶ 57. Indeed, there was no reason to believe that Plaintiff would not appear in court in response to a summons.  Id. at ¶ 59.  He did, in fact, appear in court in response to the littering summons. Id. Swingle also had no basis to believe that Plaintiff posed a danger to anyone.  Id. at ¶ 60. Nonetheless, Swingle sought and obtained a warrant for Plaintiff's arrest with a $10,000.00 cash-only bond.  Id. at ¶ 58, 61-62.  As a result of these actions, Swingle directly caused Plaintiff's arrest and detention for over eight hours.  Id. at ¶¶ 62-70.

---

[5]      Though discovery Plaintiff has learned that Swingle has no authority to enforce §17-5; accordingly, Plaintiff withdraws any claim against Swingle with respect to enforcement of §17-5.

Swingle took these actions despite longstanding Supreme Court precedent that clearly established that Plaintiff's expressive conduct was protected by the First Amendment.  Under these circumstances, Plaintiff is reasonably chilled from again engaging in expressive conduct that involves purposefully and publicly mutilating, defacing, defiling, trampling upon, or otherwise desecrating the flag.  Id. at ¶ 72.

Because Defendant Swingle caused Plaintiff to be charged, arrested, and held in jail for engaging in expressive conduct that is protected by the First Amendment, Swingle caused a violation of Plaintiff's constitutional rights.  Plaintiff's expressive conduct was protected for the reasons explained, *supra.*, and the statute under which Swingle caused Plaintiff to be charged, arrested, and detained in jail is unconstitutional for the same reasons.  Swingle retains the authority and obligation to enforce Missouri's criminal statutes.  Missouri case law mandates that a prosecutor has a duty to cause the investigation, arrest, and prosecution of violations of the law that come to his knowledge and for which the police or private complainants have taken no action. *State ex inf. McKittrick v. Graves*, 144 S.W.2d 91 (Mo. 1940); *State ex inf. McKittrick v. Wymore*, 132 S.W.2d 979 (Mo. 1939).  Whether that duty carries with it some discretion, that discretion is not unfettered.  Thus, it is reasonable for Plaintiff to be chilled from again engaging in expressive conduct he knows is prohibited by a state statute, that he knows Swingle has a duty to enforce, and that Swingle has enforced to cause Plaintiff's arrest in the past.  SOUMF at ¶ 72.

Plaintiff is entitled to summary judgment against Swingle on Count III of his Second Amended Complaint for the same reasons he should be granted summary judgment on Count I.  Swingle caused Plaintiff to be arrested for engaging in expressive conduct protected under the First Amendment under the authority of the statute that any reasonable prosecutor would have known was unconstitutional.

As relief for Count III, Plaintiff seeks a permanent injunction enjoining Defendant Swingle, his successors, his officers, agents, servants, employees, attorneys, and all persons acting in concert with them, or in connection with them, from enforcing or threatening to enforce §578.095.  To obtain a permanent injunction, Plaintiff must show the following: (1) actual success on the merits; (2) that he faces irreparable harm; (3) that the harm to him outweighs any harm to others; and (4) that an injunction serves the public interest. *Bank One, Utah v. Guttau*, 190 F.3d 844, 847 (8th Cir. 1999) ("The standard for granting a permanent injunction is essentially the same as for a preliminary injunction, except that to obtain a permanent injunction the movant must attain success on the merits"); *Dataphase Sys., Inc. v. C.L. Sys., Inc.,* 640 F.2d 109, 114 (8th Cir. 1981) (preliminary injunction standards).

As to actual success on the merits, the grant of summary judgment constitutes actual success.

Plaintiff will suffer irreparable harm absent an injunction that enjoins the Defendant Swingle from enforcing §578.095.  Plaintiff will continue to not engage in expressive conduct involving purposefully and publicly mutilating, defacing, defiling, trampling upon, or otherwise desecrating the flag so long as Swingle retains the authority, and obligation, to cause him to be charged and arrested for doing so.  Id. at ¶ 54.  It is well-settled law that a "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion).  Because Plaintiff has established success on the merits of his First Amendment claim, he has also established irreparable harm as the result of the deprivation of his First Amendment rights. *See Marcus v. Iowa Pub. Television,* 97 F.3d 1137, 1140-41 (8th Cir.1996).

The balance of harms also favors a permanent injunction.  Plaintiff will be harmed if Swingle retains the authority to continue enforcing §578.095.  Further, the availability of continued enforcement threatens the free speech rights of all persons within Cape Girardeau County.  "The balance of equities … generally favors the constitutionally-protected freedom of expression." *Phelps-Roper*, 545 F.3d at 690.  In contrast, there is no harm to Swingle, who has no legitimate interest in the continued enforcement of a statute that is unconstitutional.

Finally, a permanent injunction is in the public interest.  "It is always in the public interest to protect constitutional rights." *Phelps-Roper v. Nixon*, 545 F.3d at 689.  Because the continued enforcement of §578.095 is unconstitutional, the public interest is served by preventing further enforcement of the statute by Swingle.  The public interest supports an injunction that is necessary to prevent the government from violating the Constitution.  *Doe v. South Iron R-1 School Dist.*, 453 F.Supp.2d 1093, 1103 (E.D.Mo. 2006), *aff'd* 498 F.3d 878 (8th Cir. 2007).

3.    § 1983 Claim Against Defendant Peters -- Count IV

Peters detained and questioned Plaintiff about his expressive conduct on October 20, 2009.  SOUMF at ¶¶ 17-35.  He issued him a citation for littering, even though by Peters's own admissions there was no basis for believing Plaintiff had violated Cape Girardeau's littering ordinance.  Id. at ¶¶ 31, 36-37.  He seized Plaintiff's mutilated flag without cause.  Id. at ¶¶ 34, 38. He completed a "probable cause" statement suggesting that Plaintiff had violated §598.095, even though any reasonable officer would have known that Plaintiff's expressive conduct was protected by the First Amendment.  Id. at 40-57.  And he caused his probable cause statement to be sent to the Prosecuting Attorney's office for review.  Id. at ¶ 56.  After Plaintiff was charged with a violation of §578.095, based on Peters's assertion of probable cause, Peters arrested him

and caused him to be held in jail, despite the fact that any reasonable officer in Peters's place would have known that Plaintiff had engaged in expressive conduct protected by the First Amendment. Id. at ¶¶ 63-70.

a.      Constitutional Violations by Peters

i.      Investigatory Detention of October 20, 2009

Peters first violated Plaintiff's constitutional rights by detaining him on October 20, 2009, and questioning him about his expressive conduct, while having no basis for believing a crime had been committed.  When Peters appeared on the scene of Plaintiff's expressive conduct, he picked up the flag and began to interrogate Plaintiff.  Id. at ¶¶ 17-19. Peters was visibly angry. Id. at ¶ 19.  Peters never advised Plaintiff that he was free to leave or to refuse to answer Peters's questions.  Id. at ¶ 22. Given Peters's apparent show of authority, Plaintiff did not believe he was at liberty to leave or decline to answer questions.  Id. at ¶ 23.  Nothing about the act of engaging in expressive conduct by desecrating a flag on a public street suggests that a suspect must be investigated for criminal activity.  Yet Plaintiff was detained for more than fourteen minutes.  Id. at ¶¶ 17-35.

The October 20, 2009, encounter was *not* merely a consensual encounter where the police approach a person in a public place, engage in conversation, and request information, but the person is free not to answer and walk away. *See United States v. Mendenhall,* 446 U.S. 544, 553 (1980).  Even a consensual encounter, however, implicates the Fourth Amendment when, as here, the officer, by show of authority, restrains the person's liberty so that a reasonable person would not feel free to decline the officer's requests or to terminate the encounter. *See Mendenhall,* 446 U.S. at 554.  A person who does not feel free to decline a request, or to

terminate the encounter, is "seized" and the encounter becomes an investigatory detention. *See Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968).

Peters did not simply happen upon Plaintiff and strike up a conversation.  His purpose from the beginning was to investigate the Plaintiff's disrespectful treatment of the flag.  Whether from the beginning or only upon his show of authority, Peters's encounter with Plaintiff on October 20, 2009, constituted an investigatory detention.  The Fourth Amendment requires a police officer to have reasonable, articulable suspicion that criminal activity is afoot before initiating an investigatory detention. *United States v. Sokolow,* 490 U.S. 1, 7 (1989).  Even then, an investigatory detention must be temporary and only long enough to effectuate its purpose, using the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Florida v. Royer,* 460 U.S. 491, 500 (1983).

Peters had no reasonable or articulable suspicion that criminal activity was afoot.  The police received a call about desecration of a flag. SOUMF at ¶¶ 12-13. When Peters arrived at the scene, Plaintiff was alone on the street with his desecrated flag.  Id. at ¶ 17.  Peters did not question the complainant or any witness.  Id. at ¶ 20.  Instead he investigated the desecrated flag.  Id. at ¶ 19.  He quickly ascertained that Plaintiff had mutilated the flag for expressive purposes.  Id. at ¶¶ 24-29.  But he did not end the encounter.  Id. at ¶ 30.  Instead he continued an investigation until he issued Plaintiff a citation for an offense which he had no basis to believe Plaintiff had committed.  Id. at ¶¶ 31-35.  Based on the uncontroverted material facts, Plaintiff is entitled to summary judgment that Peters's investigatory detention of him on October 20, 2009, violated the Fourth Amendment.

ii.   Issuance of Citation for Littering

Peters next violated Plaintiff's constitutional rights by issuing him a citation for littering without probable cause and in retaliation for his expressive conduct.  This violated Plaintiff's rights in two ways.  First, "[p]robable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed ... an offense at the time of the arrest." *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000)(internal quotation omitted, alteration in text).  Although Peters stated on the citation that he had probable cause to believe Plaintiff committed an unnamed offense in violation of §22-74 of the Code of Ordinances of the City of Cape Girardeau, Peters did not, in fact, have probable cause.  SOUMF at ¶¶ 31, 36-38.  Second, "Retaliation by a government actor in response to … an exercise of First Amendment rights  [critical of the government] forms the basis for § 1983 liability." *Naucke v. City of Park Hills,* 284 F.3d 923, 927 (8th Cir.2002). In the absence of probable cause, retaliation for Plaintiff's expressive conduct is the only explanation for the issuance of a citation.

The issuance of the citation imposed upon Plaintiff's liberty.  In addition to the time he was detained while the citation was being issued, in order to avoid arrest Plaintiff was required to sign a "promise to dispose of the charges of which [he was] accused through court appearance or prepayment of fine and court costs." SOUMF at ¶¶ 17-35. In fact, he went to court.  Id. at ¶ 59.

There was no probable (or other) cause to believe that Plaintiff had violated §22-74.  Section 22-74 states, "No person shall throw or deposit litter in or upon any street, sidewalk, or other public place within the city except in receptacles, or in an official city dump." Id. at ¶ 36.  There was no cause or basis to believe that Plaintiff had violated § 22-74 because his flag was not litter.  In the Code, "*Litter* means 'garbage,' 'refuse' and 'rubbish' and all other waste

26

material which, if thrown or deposited as herein prohibited, tends to create a danger to public health, safety and welfare." Id.  At his deposition, Peters admitted that the flag was not garbage, refuse, rubbish, or waste material. Id. at ¶ 37.  What is more, Plaintiff never abandoned the flag he temporarily placed on the ground. Id at ¶ 28.  The citation was eventually voided. Id. at ¶ 39.

Furthermore, the citation noted that Plaintiff "admitted to tearing up the United States Flag[.]" Id. at ¶ 32 (emphasis added),  Peters's final radio transmission was that he "was issued a citation for tearing up the American Flag[.]" Id. at ¶ 35 (emphasis added).  Peters deviated from the normal practice by having Plaintiff charged with a state crime –and arrested– when there was an ordinance under which he could have been charged, as has been done in similar situations in the past. Id. at ¶¶ 47-48.  On October 20, 2009, Peters was visibly angry and puzzled why Plaintiff "would… do such a thing[.]" Id. at ¶¶ 19, 24.  His suggestions on October 23, 2009 – while arresting Plaintiff– that Plaintiff would go to prison for desecrating the flag, that Plaintiff should leave the country, and that Peters would have arrested Plaintiff on his birthday instead had he realized it was so soon, all demonstrate that Peters's unconstitutional actions were motivated by his disagreement with, and in retaliation for, Plaintiff's expressive conduct. Id. at ¶¶ 66-68.

Based on the uncontroverted material facts, Plaintiff is entitled to summary judgment that Peters's October 20, 2009, citation of him for a purported violation of §22-74 violated the First and Fourth Amendments.

iii.      Execution of Probable Cause Statement

Peters next violated Plaintiff's constitutional rights by executing a purported probable cause statement.  Peters's probable cause statement caused Plaintiff to be charged and arrested. SOUMF at ¶¶ 40-56.

In his police report, Peters indicated that he applied for a "State Warrant Application" for "Desecration of the United States Flag." Id. at ¶ 53. He also completed a "probable cause statement" in which he swore he had "probable cause to believe that on 10-20-2009 at 1328, [Plaintiff] committed one or more criminal offenses. DESECRATION OF THE UNITED STATES FLAG." Id. at ¶50. Peters did not have probable cause to believe that Plaintiff had committed a crime because any reasonable officer in Peters's position would have known that Plaintiff's expressive conduct was protected by the First Amendment. Nevertheless, as a direct result of Peters's probable cause statement, Plaintiff was charged with a crime, arrested, and held on a $10,000.00 cash-only bond. Id. at ¶¶ 61-70.

"[I]t is clearly established that the Fourth Amendment requires a warrant application to contain a truthful factual showing of probable cause." *Hunter v. Namanny*, 219 F.3d 825, 831 (8th Cir. 2000). In his probable cause statement, Peters omitted a key fact that he knew to be true: Plaintiff was engaged in expressive conduct. Had he included this information, it would have been apparent to any reasonable prosecutor or judge that there was not probable cause to believe Plaintiff had committed a crime. A warrant based upon a probable cause statement that reflects a reckless disregard for the truth violates the Fourth Amendment. *Id.* at 829 (citing *Franks v. Delaware,* 438 U.S. 154, 171 (1978)).

Based on the uncontroverted material facts, Plaintiff is entitled to summary judgment that Peters's October 20, 2009, probable cause statement violated the Fourth Amendment.

iv.      Arrest and Detention in Jail on October 23, 2009

Peters next violated Plaintiff's constitutional rights by arresting him on October 23, 2009, and thereby causing him to be held in jail for more than eight hours.  SOUMF at ¶¶ 64-70.

Peters arrested Plaintiff for an alleged violation of §578.095 at or about 10:45 a.m. on October 23, 2009.  Id. at ¶ 54.  The arrest caused him to be held in jail until after or around 7:00 p.m.  Id. at ¶ 56.

There is no §1983 liability when there is probable cause for an arrest.  *Deary v. Three Unnamed Police Officers*, 746 F.2d 185, 192-93 (3d Cir.1984).   On the other hand, there is liability for arrests made without probable cause.  "Probable cause exists if the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed…an offense."  *Flynn v. Brown*, 395 F.3d 842, 844 (8th Cir. 2005).

In ordinary circumstances, the existence of a warrant would establish probable cause for a police officer to arrest Plaintiff.  This is because the warrant is issued only after a judge makes an assessment that probable cause exists.  This case is different.  In this case, the warrant application was supported only by Peters's probable cause statement.  SOUMF at ¶¶ 40-56. Peters knew that Plaintiff was engaged in expressive conduct when he mutilated his flag (Id. at ¶ 29), and a prudent person looking at the totality of facts as Peters knew them to be –both objectively and subjectively– would not believe that Plaintiff had committed a criminal offense. The warrant existed because of Peters's pretense that probable cause existed. Id. at ¶¶ 40-56. Peters arrested Plaintiff anyhow, causing Plaintiff to be held in jail for more than eight hours.  Id. at ¶¶ 64-70.

Because based on the uncontroverted evidence Peters arrested Plaintiff under circumstances where no prudent person would have believed Plaintiff had committed a crime, Peters violated Plaintiff's rights secured by the Fourth Amendment.

        b.      Remedy

As relief for Peters's violations of his constitutional rights, Plaintiff is entitled to an award of damages.  A party is entitled to an award of, at a minimum, nominal damages when a constitutional right is violated because of the "importance to organized society that those rights be scrupulously observed." *Carey v. Piphus*, 435 U.S. 247, 266 (1978);  *see also Farrar v. Hobby,* 506 U.S. 103, 112 (1992) ("*Carey* obligates a court to award nominal damages when a plaintiff establishes the violation of his [constitutional] right ... but cannot prove actual injury"). In this case, Plaintiff has actual damages.  He lost his liberty while he was detained during Peters's investigation.  SOUMF at ¶¶ 17-35.  He lost his liberty further when Peters continued to issue him a citation for littering, which in turn compelled him to pay a fine or make a court appearance, without cause to reasonably believe that Plaintiff had committed the offense of littering.  Id. at ¶33.  He did sit in court on the date he was commanded to be there on the citation. Id. at ¶ 59.  Peters further violated Plaintiff's constitutional rights by executing a purported probable cause statement without probable cause to believe Plaintiff had committed a crime and then arrested him under the authority of a warrant that Peters knew was issued without probable cause to believe that Plaintiff had committed a crime.  Id. at ¶¶ 40-56.  If the parties are unable to reach an agreement on the amount of damages, then this case should remain set for trial on the amount of damages to be awarded.

4.      Section 1983 claim against City of Cape Girardeau – Count V

a.  Municipal liability

Plaintiff is entitled to summary judgment against the City of Cape Girardeau because based on the uncontroverted facts, the violations of Plaintiff's constitutional rights were caused by the policies, customs, and practices of the City of Cape Girardeau.  The policy of the City of Cape Girardeau to criminalize expressive conduct that is disrespectful of the flag caused the violation of Plaintiff's constitutional rights.  SOUMF at ¶¶ 44-48.  The policy was embodied by the enactment of §17-5 and further evidenced by the recent enforcement of §17-5.  Id. at ¶ 48.  Cape Girardeau also caused the violation of Plaintiff's constitutional rights by its policy, custom, and practice of failing to adequately supervise and train its police officers, including Peters, about constitutional rights.  Id. at ¶¶ 73-79.

It is the policy of Cape Girardeau to criminalize expressive conduct involving disrespectful treatment of the flag.  Id at ¶¶ 44-48.  The policy is set forth in §17-5.  Id.  The ordinance has been enforced.  Id. at ¶ 48.  The ordinance establishes the liability of Cape Girardeau because it is "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 (1978).  Cape Girardeau is liable under §1983 for the enforcement of §578.095— the unconstitutional state statute—because the city, by ordinance, has adopted the state law as its own.  *Cooper v. Dillon,* 403 F.3d 1208, 1222 (11th Cir. 2005).

While in some instances a city might not be liable for enforcing an unconstitutional state statute that the city did not promulgate or adopt, in this case Peters's decision to enforce §578.095 advanced Cape Girardeau's policy of criminalizing expressive conduct that is disrespectful of the flag.  Section 1983 liability is appropriate because the City of Cape

Girardeau adopted the unconstitutional proscriptions of Mo. Rev. Stat. §578.095 as its own. *Cooper*, 403 F.3d at 1222. The policy of criminalizing expressive conduct that is disrespectful of the flag itself violates federal law and directs police officers, like Peters, to violate federal law by detaining, citing, and arresting persons who are engaged in expressive conduct that is disrespectful of the flag.  As the Supreme Court has explained, "Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward." *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997)(emphasis in original).  Proof that the City of Cape Girardeau's legislative body has "intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Id.*, at 405.   The determination that the action directed by the municipality "itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains."  *Id.*

    Municipal liability also attaches in this case because the City of Cape Girardeau provided inadequate training and supervision of Peters that was so deficient as to constitute a policy of deliberate indifference to Plaintiff's constitutional right to engage in expressive conduct on a public street. *See Gregory v. City of Louisville*, 444 F.3d 725, 753-54 (6th Cir. 2006)(municipal liability for inadequate training or supervision).  Plaintiff is entitled to summary judgment with respect to whether Cape Girardeau provides adequate training and supervision on First Amendment rights, generally, and the right to engage in expressive conduct in public fora.  In this case, Cape Girardeau provides <u>no</u> training whatsoever about the First Amendment.  SOUMF at ¶¶ 73-77.  As a result more than one person has been arrested in Cape Girardeau by separate officers for engaging in expressive conduct with a flag even though it has been clearly established for more than twenty years that such conduct is protected by the First Amendment.

Id. at ¶ 48.  In addition to an utter lack of training, there is a lack of supervision.  Id. at ¶¶ 78-79.

Peters executed a probable cause statement and submitted a report indicating that he was

pursuing a warrant for desecration of a flag.  Id. at ¶¶ 40-56.  He did so without supervision.  Id.

After charges were filed at Peters's request and a warrant issued, Peters set forth to arrest

Plaintiff and take him into custody.  Id. at ¶¶ 63-70.  Any reasonable supervision of Peters from

October 20, 2009 to October 23, 2009, would have alerted Peters to the fact that more than

twenty years ago, in two well-publicized cases, the Supreme Court of the United States held

unequivocally that expressive conduct that is destructive of flags is protected by the First

Amendment and would have advised Peters that his actions toward Plaintiff for merely engaging

in expressive conduct that was disrespectful of his flag were unconstitutional.  The lack of

supervision of Peters is not an isolated incident.  Another individual was arrested by the Cape

Girardeau police and charged with a criminal offense for engaging in expressive conduct by

desecrating a flag.  Id. at ¶ 48.

When it comes to activities protected by the First Amendment, the City of Cape

Girardeau provides no training and no supervision.  Id. at ¶¶ 73-79.  Given the clear precedent on

the protected nature of expressive conduct that is disrespectful of the flag, it is apparent that even

minimal training and supervision would have prevented a violation of Plaintiff's constitutional

rights.  That Plaintiff was detained, investigated, charged, arrested, and held in jail for more than

eight hours for engaging in expressive conduct because his expressive conduct was disrespectful

of the flag would be unthinkable to any prudent person with a basic understanding of the First

Amendment.  Yet it occurred in 2004 and again in 2009 because the City provides no training or

supervision.

33

b.      Remedy

As a remedy for the City of Cape Girardeau's violation of his constitutional rights,

Plaintiff seeks injunctive relief and damages.

As discussed, *supra.*, a permanent injunction is appropriate where a plaintiff shows: (1)

actual success on the merits; (2) irreparable harm; (3) that the harm to the plaintiff outweighs any

harm to others from an injunction; and (4) that an injunction serves the public interest.  *Guttau*,

190 F.3d at 847.  Summary judgment in favor of Plaintiff constitutes success on the merits.

Plaintiff will suffer irreparable harm if an injunction does not issue.  Absent an injunction, Cape

Girardeau will continue its policy of criminalizing expressive conduct involving the flag,

continue not to train its police officers about the First Amendment, and continue to provide

inadequate supervision of its officers. Plaintiff will continue to fear arrest for engaging in

expressive conduct in the City of Cape Girardeau.  SOUMF at ¶ 72.  It is well-settled law that a

"loss of First Amendment freedoms, for even minimal periods of time, unquestionably

constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. at 373 (plurality opinion). Because

Plaintiff has established success on the merits of his First Amendment claim, he has also

established irreparable harm as the result of the deprivation. *See Marcus v. Iowa Pub. Television,*

97 F.3d 1137, 1140-41 (8th Cir. 1996).  An injunction to protect the First Amendment rights of

persons engaging in expressive conduct in Cape Girardeau will cause no harm to the City of

Cape Girardeau. "The balance of equities … generally favors the constitutionally-protected

freedom of expression." *Phelps-Roper*, 545 F.3d at 690. Finally, "it is always in the public

interest to protect constitutional rights." *Id.*  The public interest is particularly strong here

because the restriction on speech harms "not only [speakers] but society as a whole, which is

deprived of an uninhibited marketplace of ideas." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003);

34

*see also Taxpayers for Vincent*, 466 U.S. at 798.  Because Plaintiff has demonstrated that he is entitled to succeed on the merits, the public interest is served by entering an injunction to prevent continuation of the unconstitutional policy as well as require adequate training and supervision of police officers.

For these reasons, Plaintiff respectfully requests this Court enter a permanent injunction prohibiting Defendant City of Cape Girardeau, its officers, agents, servants, employees, attorneys, and all persons acting in concert with them, or in connection with them from investigating, detaining, or arresting any individual or individuals for engaging in expressive conduct on the basis that the expressive conduct includes the burning, mutilation, defiling, and desecration of a state or  national flag.  Further, Plaintiff respectfully requests this Court enter a permanent injunction requiring Defendant City of Cape Girardeau to develop and implement adequate training of all police officers on issues related to the First Amendment and adequate supervision of police officers investigating any matter related to the engaging of expressive conduct.

In addition, as explained, *supra.*, Plaintiff is entitled to damages for the violation of his constitutional rights by Defendant City of Cape Girardeau.  If the parties are unable to reach an agreement on the amount of damages, then this case should remain set for trial on the amount of damages to be awarded.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests this Court grant his motion for summary judgment on each count of his second amended complaint.

Respectfully submitted,


AMERICAN CIVIL LIBERTIES UNION
   OF EASTERN MISSOURI

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827MO
GRANT R. DOTY, #60788MO
454 Whittier Street
St. Louis, Missouri 63108
PHONE:  (314) 652-3114
FAX: (314) 652-3112
tony@aclu-em.org
grant@aclu-em.org

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2011, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system and a copy was made available electronically to the

following electronic filing participants:

> **A. M. Spradling, III**
> SPRADLING & SPRADLING
> 1838 Broadway
> P.O. Drawer 1119
> Cape Girardeau, MO 63702-1119
> Phone:  573-335-8296
> Fax:  573-335-8525
> Email: spradlaw@swbell.net
> *LEAD ATTORNEY*
> *ATTORNEY TO BE NOTICED*

/s/  Anthony E. Rothert