UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| FRANK L. SNIDER, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:10-CV-100 (CEJ) |
| ) | |
| CITY OF CAPE GIRARDEAU, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on cross-motions for summary judgment filed by plaintiff Frank L. Snider, III, and defendants City of Cape Girardeau, H. Morley Swingle, and Matthew Peters.  All issues are fully briefed.

This case arises from an incident in which Snider slashed a United States flag and threw it on the ground because he was angry with the government.  Plaintiff was initially charged with violating a Cape Girardeau city ordinance and was later charged with violating Missouri's flag desecration statute, § 578.095, Mo.Rev.Stat.  He brings this action pursuant to 42 U.S.C. § 1983, against the City of Cape Girardeau, H. Morley Swingle, the prosecutor for Cape Girardeau County, and Matthew Peters, a City police officer.  Plaintiff claims that the defendants' actions deprived him of his rights under the First, Fourth and Fourteenth Amendments.  Plaintiff seeks a declaration that the ordinance are unconstitutional and an injunction barring its future enforcement.[1]

I.  **Legal Standard**

---

[1]The Court has separately granted plaintiff's motion for summary judgment with respect to his claim that § 578.095, Mo.Rev.Stat., is facially unconstitutional.

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

II.  **Background**

On October 20, 2009, while standing in his front yard, Snider attempted to set fire to a United States flag. When he was unable to ignite the flag, he shredded it with a knife and threw it on the ground. A neighbor called the police and told the dispatcher, "[H]e's cut the United States flag up with a knife, throw'd it out in the

street for the cars to run over; now I am a United States citizen and I don't like it. . . . You need to come down and do something with him." Pl. Ex. 2-B [Doc. 41-4].

Defendant Peters was dispatched to respond to what he understood to be a dispute between neighbors.  When Peters arrived at the scene, he saw the flag in the road and plaintiff standing in his yard.  He issued plaintiff a citation for violating the city's littering ordinance, § 22-74.[2]  Id.  At the conclusion of the encounter, Peters told the dispatcher that he had issued plaintiff a "summons for tearing up the American flag and throwing it in the middle of the street."  Pl. Ex. 2-E [Doc. 41-7]. The littering citation was eventually voided.

Peters seized the flag as evidence and returned to the police station.  It was then that he learned of a state statute prohibiting flag desecration.  After reviewing the statute, § 578.095 Mo.Rev.Stat, Peters drafted a probable cause statement indicating that he believed that plaintiff had committed the criminal offense of desecration of the United States flag.  He sent the probable cause statement to defendant Swingle, who obtained a warrant.  On October 23, 2009,  Peters executed the warrant and arrested plaintiff for violating § 578.095 Mo.Rev.Stat.  Plaintiff was held in jail for eight hours.

In an affidavit, Swingle states that at the time of this incident he was unaware of the decision in Texas v. Johnson, 491 U.S. 397 (1989), in which the United States Supreme Court held that a Texas statute criminalizing flag desecration was unconstitutional.  Upon reading the case, Swingle dismissed the charge against plaintiff and plaintiff was released from the county jail.

---

[2]Section 22-74 of the Cape Girardeau Code of Ordinances proscribes "throw[ing] or deposit[ing] litter in or upon any street . . ." Pl. Ex. 2-F.  [Doc. 41-8].  Littering is a misdemeanor punishable by a fine not exceeding $500 and/or a period of imprisonment not exceeding 3 months.  § 22-72.  Pl. Ex. 2-H [Doc. 41-10].

At the time of the incident, a Cape Girardeau city ordinance prohibiting flag desecration was in effect. Ordinance § 17-5 provided:

> Any person who purposefully and publicly mutilates, defaces, defiles, tramples upon or otherwise desecrates the national flag of the United States or the state flag of the state of Missouri is guilty of the crime of flag desecration.

Section 578.095 and Ordinance § 17-5 contain identical language. Plaintiff was never charged with violating Ordinance § 17-5. On February 22, 2011, the Cape Girardeau city council repealed the flag desecration ordinance.

### III.   Discussion

In the second amended complaint, plaintiff claims that Peters violated his rights under the First, Fourth, and Fourteenth Amendments and he seeks compensatory and punitive damages (Count IV). He also asserts that the violation of his rights occurred pursuant to a policy, practice, or custom of the City of Cape Girardeau (Count V). In addition, plaintiff seeks a declaration that the repealed Cape Girardeau flag desecration ordinance is unconstitutional (Count II). Finally, plaintiff seeks an injunction preventing Swingle from enforcing § 578.095 and Ordinance § 17-5 (Count III). In the cross-motion for summary judgment, Peters asserts that he is entitled to qualified immunity, and the City asserts that there is no basis for municipal liability under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).

####   A.   Plaintiff's Claims Against Peters

Plaintiff claims that Peters violated his constitutional rights by: (1) conducting an investigatory detention without probable cause; (2) issuing a citation for littering without probable cause; (3) executing an improper probable cause statement in support of an arrest warrant for flag desecration; and (4) arresting him pursuant to the warrant. Plaintiff's second amended complaint contains no allegations with respect to

the littering citation and the Court will not consider a claim raised for the first time on summary judgment.[3]

Peters asserts that he is entitled to summary judgment on plaintiff's claims on the basis of qualified immunity. Qualified immunity shields a public official from liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." El-Ghazzawy v. Berthiaume, 636 F.3d 452, 456 (8th Cir. 2011) (citing Doe v. Flaherty, 623 F.3d 577, 583 (8th Cir. 2010)) (internal quotation and citation omitted). In analyzing qualified immunity, the Court ascertains (1) whether the facts alleged, construed in the light most favorable to the nonmoving party, establish a violation of a constitutional right, and (2) whether such right was clearly established so that a reasonable officer would have known his actions were unlawful. Id. The Court has discretion to decide which prong to analyze first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

### Investigatory Detention

Plaintiff characterizes the initial contact with defendant Peters on October 20, 2009, as an unlawful investigatory detention. Plaintiff's neighbor Ms. Henderson called the police at 5:03 p.m. Pl. Ex. 2-B [Doc. 41-4]. During the course of the call, Ms. Henderson directed comments to plaintiff, telling him to "shut up," and saying, "Oh they're coming buddy, they're coming," prompting the dispatcher to warn her not to "egg it on."

Defendant Peters testified that he responded to a call for "a dispute between neighbors." Pl. Ex. 3 at 12. [Doc. 41-14]. He arrived at 5:11 p.m. Pl. Ex. 2-C [Doc.

---

[3]Even if the claim were properly before the Court, it seems likely that defendant Peters had arguable probable cause for issuing the littering citation and thus would be entitled to qualified immunity on the claim.

41-5]. According to Peters, when he arrived at the scene, he saw the flag in the road and picked it up. He testified that he "had no idea what had happened and had no idea who Mr. Snider was" or "if he was involved in the dispute . . . or not." Plaintiff was "the closest there so [Peters] asked him what [the flag] was doing out there." Plaintiff reportedly replied that he had torn the flag up and thrown it in the road. When defendant Peters asked plaintiff "why he would do such a thing," he replied that "he hated the United States because it was the country's fault that he could not find a job." Id. According to the incident report, the entire episode lasted 15 minutes.[4]

Not every encounter between the police and a citizen constitutes an unreasonable seizure in violation of the Fourth Amendment. "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968).

A brief seizure, or investigatory detention, by police is lawful if based on reasonable suspicion. Terry, 392 U.S. at 32-33. An investigatory detention is valid only when the police have a reasonable, articulable suspicion of criminal activity. Terry, 392 U.S. at 21 (police must point to "specific and articulable facts which, taken

---

[4]In his description of this encounter, as contained in his declaration, Pl. Ex. 1 [Doc. 41-1], plaintiff states that he was standing near the flag when defendant Peters arrived. He further states that Peters was "visibly angry" and "confronted" him, asking whether he had "desecrated the flag." When plaintiff "admitted" he had, Peters "continued to interrogate" him. Peters "never told [plaintiff he] was free to leave or refuse to answer his questions." Peters "required" plaintiff to remain in place while he ran his name through the dispatcher. Peters then issued plaintiff a littering citation and left, taking the flag with him. Plaintiff's use of terms such as "confronted" and "interrogated" in lieu of a straightforward recitation of the actual words spoken is of no use in helping the Court understand the facts. Statements consisting of conclusory and speculative assertions like these must be ignored.

together with rational inferences from those facts, reasonably warrant that intrusion."); United States v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004) (to comply with the Fourth Amendment, police must be able to "articulate some minimal, objective justification for an investigatory stop."). Assessing the validity of an investigatory stop involves a dual inquiry: (1) whether the investigatory stop is lawful at the outset, and (2) whether the manner in which the stop was conducted "was reasonably related in scope to the circumstances which justified the interference in the first place." El-Ghazzawy v. Berthiaume, 636 F.3d 452, 457 (8th Cir. 2011)(quoting Terry, 392 U.S. at 19–20).

There is no doubt that the investigatory stop in this case was lawful at the outset: After being dispatched to the scene of a disturbance between neighbors, Peters encountered plaintiff and questioned him about the torn flag in the street. Plaintiff admitted that he had shredded the flag and put it in the street. He also made a statement about the reasons for his actions. The Court sees nothing in this exchange that was outside the bounds of an appropriate investigation of the initial call.

Plaintiff complains that defendant Peters focused solely on plaintiff and did not speak with the complaining neighbor. The completeness of the officer's investigation has no relevance to the issue of whether the encounter was lawful. Plaintiff also complains that Peters "detained" him while running a warrant check. During an investigatory stop, a police officer is permitted to engage in activities that are reasonably related to effect the purpose of the stop. United States v. Sharpe, 470 U.S. 675, 686 (1985). Conducting a computer check to determine the existence of outstanding warrants for a suspect is a typical act performed by the police. Here, the entire exchange between plaintiff and Peters lasted 15 minutes and there is no

evidence that Peters was dilatory in his investigation or engaged in "any delay unnecessary to the legitimate investigation." Id.

Plaintiff argues that Peters improperly issued the littering citation as a punishment for his protected expressive conduct. Without deciding the merits of plaintiff's challenge to the citation, nothing suggests that the manner in which Peters issued the summons was inappropriate.

The Court finds that the investigatory detention of the plaintiff was based on a reasonable, articulable suspicion that plaintiff had violated the law and was conducted in a manner that was reasonably related to the circumstances. Peters is entitled to summary judgment on this claim.

### Probable Cause Statement and Arrest

Peters does not contest plaintiff's assertion that his arrest for violation of the Missouri flag desecration statute violated the First and Fourth Amendments. He argues instead that he is entitled to qualified immunity. To overcome a claim of qualified immunity, plaintiff must show that the rights he asserts were clearly established so that a reasonable officer would have known that his actions were unlawful. El-Ghazzawy, 636 F.3d at 456.

In 1974, the Supreme Court decided Spence v. Washington, 418 U.S. 405 (1974), overturning plaintiff's conviction for improper use of a flag for displaying a flag with a peace sign taped to it. In Texas v. Johnson, 491 U.S. 397 (1989), the Court held that Texas's flag desecration statute was unconstitutionally applied in a prosecution for flag-burning where the defendant's actions constituted expressive conduct. Thus, on October 20, 2009, it was clearly established as a matter of law that

it the First Amendment prohibits the prosecution of a person who uses the American flag to express an opinion.

Peters argues that he did not know of these decisions, but his subjective awareness of the law is immaterial, as "a reasonably competent public official should know the law governing his conduct." Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982); see Koser v. Price County, 834 F. Supp. 305, 309 (W.D. Wisc. 1993) (whether defendants knew about Spence and Johnson immaterial to qualified immunity analysis); see also Dible v. Scholl, 506 F.3d 1106, 1111 (8th Cir. 2007) (denying qualified immunity to prison officials on due process claim because "twenty-nine years is enough time that 'a reasonably competent public official should know the law governing his conduct.'"); Levine v. Clement, 333 F. Supp. 2d 1, 6 (D. Mass. 2004) (denying qualified immunity because "an objectively reasonable official would have realized that" there was no probable cause to arrest plaintiff who directed comments to Canadian flag in parade). The fact that the Missouri statute had not been declared unconstitutional is similarly of no help to Peters, in light of the controlling Supreme Court precedent. See Lawrence v. Reed, 406 F.3d 1224, 1231-32 (10th Cir. 2005) (officers cannot rely on clearly unconstitutional ordinance authorizing seizure of derelict vehicles to immunize unlawful conduct); but see Amore v. Novarro, 624 F.3d 522 (2d Cir. 2010) (undercover officer entitled to qualified immunity for arrest of plaintiff pursuant to loitering statute still on books despite being declared unconstitutional 18 years earlier).

Peters also argues that he is shielded by virtue of having completed a probable cause statement and applying for an arrest warrant. Here, the fundamental question is whether "a reasonably well-trained officer" in his position would have known that his

statement "failed to establish probable cause and that he should not have applied for the warrant." Peterson v. City of Plymouth, Minn., 945 F.3d 1416, 1420-21 (8th Cir. 1991) (quoting Malley v. Briggs, 475 U.S. 335, 345 (1986)).  "It is true that in an ideal system an unreasonable request for a warrant would be harmless because no judge would approve it.  But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should.  We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment."  Malley, 475 U.S. at 345-46.  A reasonably trained officer in Peters's position would have known that plaintiff's expressive conduct was protected by the First Amendment and thus he should not have applied for the warrant.

Finally, Peters seeks the protection of the "extraordinary circumstances" test which extends qualified immunity to a defendant who claims "extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard."  Harlow, 457 U.S. at 819; Hedges v. Poletis, 177 F.3d 1071, 1074 (8th Cir. 1999) (official entitled to immunity when he can show extraordinary circumstances and demonstrate that law defining the violation was "unknown and unknowable").  "The circumstances must be such that the defendant was so 'prevented' from knowing that his actions were unconstitutional that he should not be imputed with knowledge of a clearly established right."  Cannon v. City and County of Denver, 998 F.2d 867, 874 (10th Cir. 1993) (quoting V-1 Oil Co. v. Wyoming Dept. of Env'l Quality, 902 F.2d 1482, 1488 (10th Cir. 1990)).  The Court does not find, and defendant Peters does not identify, any circumstance that can properly be called

extraordinary. Peters cannot overcome the presumption that he knew or should have known of the relevant legal standard.

Peters has not established that he is entitled to qualified immunity for the violation of plaintiff's First and Fourth Amendment rights. His motion for summary judgment will be denied and plaintiff's motion will be granted with respect to the arrest.

### B.     Plaintiff's Claims Against the City of Cape Girardeau

Plaintiff claims that the City has a policy of criminalizing expressive conduct in reckless disregard of constitutional rights. He also claims that the City failed to adequately train and supervise defendant Peters.

In Monell v. Department of Social Services, 436 U.S. 658 (1978), the Supreme Court held that a municipality can be liable under § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." Id. at 691. To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated his federal right. Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). Plaintiff has established this element. He must next establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation. Id. (citing City of Canton v. Harris, 489 U.S. 378 (1989)). Such a showing requires either the existence of a municipal policy that violates federal law on its face or evidence that the municipality has acted with "deliberate indifference" to an individual's federal rights. Id. (citing Board of the Cnty. Comm'rs v. Brown, 520 U.S. 397(1997)).

Plaintiff first attempts to establish Monell liability based upon the flag desecration ordinance enacted by the City in 1984. Section 17-5 of the Code of Ordinances was

substantively identical to the unconstitutional Missouri statute, § 578.095, Mo.Rev.Stat. According to municipal court records, the ordinance was enforced only one time, in 2004. That case resulted in a guilty plea and payment of a fine. The City repealed the ordinance on February 22, 2011.

Clearly, the City would be liable if plaintiff had been charged under the ordinance. This is because the constitutional violation would have flowed directly from a policymaker's deliberate choice reflected in an official policy or action. Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385, 389 (8th Cir. 2007). Here, however, plaintiff was charged under the state statute, not the ordinance. Plaintiff cannot rely on the mere existence of the ordinance to establish the causal link between Peters' arrest of plaintiff and municipal policy so as to make the City liable for the violation of plaintiff's rights. Plaintiff's argument that the City "adopted" the unconstitutional state statute as its own when it enacted the ordinance similarly fails to establish the necessary link.

Plaintiff also asserts that the City failed to properly train and supervise Peters. The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. City of Canton v. Harris, 489 U.S. 378, 388 (1989). To establish "deliberate indifference," plaintiff must offer evidence that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996). Plaintiff may show the City had notice in one of two ways: (1) by showing that the failure to train city employees was so likely to result in a violation of constitutional rights that the need for training was patently obvious; and (2) by showing a pattern of misconduct that indicated that the City's responses to a regularly recurring situation

were simply insufficient to protect the citizens' constitutional rights. S.J. v. Kansas City Mo. Pub. Sch. Dist., 294 F.3d 1025, 1029 (8th Cir. 2002). "In other words, the plaintiff must demonstrate that the city had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996) (citation and internal quotation omitted). Plaintiff points to the 2004 enforcement of the City ordinance to meet his burden that the City had the requisite notice. The record is silent with respect to the circumstances of the arrest in that case. Without evidence that the 2004 arrest was improper, plaintiff cannot show that it should have put the City on notice that constitutional violations were likely.

Peters testified that he could not recall receiving any training regarding the First Amendment, either while preparing to become a police officer or since being hired by the City. Pl. Ex. 3 at 29 (Doc. 41-14). Plaintiff argues that this absence of training is sufficient to establish the City's liability. Plaintiff does not address the fact that, by statute, the Missouri Department of Public Safety is responsible for establishing training and continuing education programs for police officers. §§ 590.030, 590.050, Mo.Rev.Stat. In this case, defendant Peters participated in the state-approved 600-hour initial training program at Southeast Missouri State University and received continuing education from "POST-approved" providers.[5] Pl. Ex. 4 at 19 (Doc. 41-15). The City police department does not set the course syllabus or objectives for officer training or conduct testing. Id. Plaintiff does not address the fact that the training is

---

[5] The Missouri Department of Public Safety is responsible for establishing training and continuing education programs. §§ 590.030, 590.050, Mo.Rev.Stat. "The Department of Public Safety's Peace Officer Standards and Training (POST) Program is a regulatory agency that is responsible for the licensure of peace officers, reserve peace officers, basic training instructors, curriculum, and training centers." Missouri Department of Public Safety website (http://www.dps.mo.gov/dir/programs/post/ default.asp).

provided in conformance with state-approved standards by state-approved trainers. Based on these facts, the Court concludes that plaintiff has failed to state any basis for concluding that the City may be liable for inadequacies in the training that Peters received. Plaintiff also argues that the City failed to properly supervise Peters between October 20th and October 23rd, and thus he was allowed to submit an improper probable cause statement and obtain a warrant for plaintiff's arrest. This alleged failure is not sufficient to establish that the City was deliberately indifferent.

### C. Claims for Declaratory and Injunctive Relief

In Count II, plaintiff seeks a declaration that Ordinance § 17-5 is unconstitutional and an injunction barring the City from enforcing it. In Count III, plaintiff seeks an injunction prohibiting defendant Swingle from enforcing Ordinance § 17-5 and Mo. Rev. Stat. § 578.095.

In a separate order, the Court ruled that Mo. Rev. Stat. § 578.095 is unconstitutional on its face and entered an injunction barring its enforcement. The Cape Girardeau flag desecration ordinance was repealed after plaintiff filed this action.

Generally, a pending claim for injunctive relief becomes moot when the challenged conduct ceases and "there is no reasonable expectation that the wrong will be repeated." Missouri Protection and Advocacy Services, Inc. v. Carnahan, 499 F.3d 803, 811 (8th Cir. 2007). "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 609 (2001)). However, "[a] statutory change . . . is usually enough to render a case moot, even if the legislature possesses the

power to re-enact the statute after the lawsuit is dismissed." <u>Outdoor Media Grp. Inc. v. City of Beaumont</u>, 506 F.3d 895, 901 (9th Cir. 2007).

The City's repeal of the ordinance and the judicial determination that the substantively identical state statute is unconstitutional are sufficient to ensure that the City will not simply re-enact the ordinance. Plaintiff's claims for declaratory and injunctive relief are moot.

\* \* \* \* \*

In conclusion, the Court holds that plaintiff Snider is entitled to summary judgment on his claim in Count IV that Peters violated his Fourth Amendment right against unreasonable seizure by charging and arresting him for violation of § 578.095, Mo.Rev.Stat. The plaintiff's motion will be granted as to that claim only. The Court further holds that Peters is entitled to summary judgment on the plaintiff's remaining claims in Count IV and that defendant City is entitled to summary judgment on plaintiff's claims in Count V. Finally, the Court holds that plaintiff's claims against defendant Swingle in Count III and plaintiff's claim in Count II for a declaration that the repealed Cape Girardeau City Ordinance §17-5 is unconstitutional are moot. Those claims will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment [Doc. #40] is **granted in part and denied in part** as set forth above.

**IT IS FURTHER ORDERED** that the motion of defendant Matthew Peters for summary judgment [Doc. #47] is **granted in part and denied in part** as set forth above.

**IT IS FURTHER ORDERED** that the motion of defendant City of Cape Girardeau for summary judgment [Doc. #47] is **granted**.

**IT IS FURTHER ORDERED** that plaintiff's claim for declaratory relief in Count II and plaintiff's claims against defendant H. Morley Swingle in Count III are **dismissed as moot**.

A judgment consistent with this Memorandum and Order will be entered upon disposition of all claims.

By separate order, this matter will be set for nonjury trial with respect to plaintiff's claim for damages against defendant Peters.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 21st day of March, 2012.